IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **Thomas Roehrman,** | § § § |
| Plaintiff, | § § **Civil Action No. 1:22-cv-1568** |
| v. | § § |
| **McAfee, LLC** and **Protected.net Group Limited d/b/a Total AV,** | § § **Jury Trial Demanded** § § |
| Defendant. | § § § |

# COMPLAINT

**Thomas Roehrman** ("Plaintiff"), by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **McAfee, LLC** ("McAfee") and **Protected.net Group Limited d/b/a Total AV** ("Total AV"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and Indiana's Deceptive Consumer Sales Act ("DCSA") under I.C. 24-5-0.5.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendants as they regularly and systematically conduct business in the State of Indiana.

4. Furthermore, Defendants sent text messages to Plaintiff at his "317" area code, associated with the Indianapolis, Indiana region.

5. Accordingly, Defendants knowingly and purposefully availed themselves to the State of Indiana and sought the business of an Indiana-based consumer by placing text messages to his "317" area code telephone number.

6. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced harm within this District.

7. A substantial portion of the acts and omissions described herein occurred within this District.

8. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

9. Accordingly, personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

10. Plaintiff is a natural person residing at 9971 Nicole Lane, Brownsburg, IN 46112.

11. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

12. McAfee is a business entity with a principal place of business, head office, or otherwise valid mailing address at 6220 America Center Drive San Jose, CA 95002 USA.

13. Total AV is a United Kingdom based business entity with an otherwise valid principal office at 1501 Main Street, Suite 201, Venice, California, 90291.

14. Defendants are "people" as that term is defined by 47 U.S.C. § 153(39).

15. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

16. At all times relevant hereto, Plaintiff, Thomas Roehrman maintained a cell phone, the number for which is (317) XXX-7298.

17. At all times relevant hereto, Mr. Roehrman used his cellular telephone primarily for residential purposes.

18. Plaintiff registered that cell phone number on the Federal Do Not Call Registry in or around April 04, 2008.

19. Mr. Roehrman registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

20. Defendants McAfee and Total AV are online cyber security companies that engage in telemarketing to solicit business for antivirus software products.

21. On or around May 14, 2021 Defendants began to place a series of solicitation text messages to Plaintiff in order to sell Plaintiff an antivirus software.

22. Prior to receiving text messages from Defendants, Plaintiff never sought information about the products that Defendants sought to sell to Plaintiff, nor did Plaintiff seek any information about antivirus software prior to receiving the communications from Defendants.

23. Plaintiff did not consent to being contacted by Defendants.

24. The text messages were not sent for "emergency purposes," but rather for telemarketing purposes.

25. Despite registration on the Do Not Call Registry, Defendants placed text messages to Mr. Roehrman on numerous occasions attempting to sell Plaintiff antivirus software that Plaintiff had no interest in.

26. In total, Defendants sent at least twenty-eight (28) text messages to Plaintiff.

27. An inexhaustive list of those text messages to Plaintiff's personal phone ending in 7298 is below:

- May 14, 2021 at 3:00 PM
- May 14, 2021 at 5:59 PM
- May 14, 2021 at 6:58 PM
- May 15, 2021 at 7:34 PM
- May 17, 2021 at 6:47 AM
- May 18, 2021 at 6:31 AM
- May 18, 2021 at 6:00 AM
- May 22, 2021 at 3:30 AM
- May 22, 2021 at 1:35 AM
- May 23, 2021 at 4:53 PM
- May 23, 2021 at 8:42 PM
- May 24, 2021 at 5:53 AM
- May 24, 2021 at 10:23 PM
- May 25, 2021 at 8:43 PM
- May 26, 2021 at 4:02 AM
- May 27, 2021 at 4:44 AM
- May 27, 2021 at 2:41 AM
- May 31, 2021 at 3:46 PM
- May 31, 2021 at 10:50 PM
- June 01, 2021 at 5:14 AM
- June 04, 2021 at 10:01 AM
- June 05, 2021 at 6:14 AM
- June 06, 2021 at 12:00 AM
- June 06, 2021 at 7:48 AM
- June 08, 2021 at 5:19 AM
- June 09, 2021 at 10:40 PM
- June 18, 2021
- June 18, 2021 at 4:48 AM

28. Upon information and belief, Mr. Roehrman received additional text messages from Defendants not included in the above list.

29. The text messages sent by Defendants deceptively notified Plaintiff that his device was infected and had spam within its messages.

30. Some of the messages gave Plaintiff an option to "Scan Now."

31. Once Plaintiff pressed the link in the message, he was brought to a webpage that indicated that Plaintiff's device was "infected with (8) adware viruses!" despite Plaintiff's device having no viruses.

32. The page provided a link to "Fix now!"

33. Upon clicking the "Fix now" button, Plaintiff was direct to Total AV's webpage which deceptively indicated that there was a "Virus Detected on your LG phone!"

34. This page had several pop-ups which indicated that Plaintiff's files were being deleted.

35. At the bottom of that page was the option to "REMOVE THREATS."

36. The page then redirected Plaintiff to Defendant McAfee's website.

37. Upon information and belief, Defendants were engaging in backward redirection marketing in which a company attempts to solicit its product and then once a prospective customer attempts to leave the page, there is a "second chance" type of marketing by scripting a webpage to not return to the previous page, but to instead redirect to a page that has previously been selected, here McAfee.

38. Accordingly, Defendants have benefitted from the deceptive and violative marketing practices of its partners.

39. Frustrated from receiving the unwanted text messages with the deceptive advertisements, Plaintiff replied "STOP" to the unwanted text messages on May 14, 2021, May 18, 2021, May 24, 2021 and June 5, 2021.

40. Despite Plaintiff's demand for the text messages to cease, Defendants continued to place unwanted text messages to Plaintiff's cellular telephone.

41. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been violated by Defendants.

42. The foregoing acts and omissions were in violation of the TCPA and Indiana's Deceptive Consumer Sales Act.

## **PRAYER FOR RELIEF**

<u>Direct and Vicarious Liability</u>

43. To the extent Defendant McAfee outsourced its illegal robocalling to Total AV, McAfee is still liable for calls that violate the TCPA.

44. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

45. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

46. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

47. Defendant McAfee hired, permitted, and enjoyed the benefits of Total AV's mass robocalling.

48. Defendant McAfee acted as principal to Total AV, who acted as its agent.

49. Defendant McAfee is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from Total AV's unlawful calls.

50. For the counts identified below, Defendant Total AV is directly liable as the party that caused the unlawful calls to be placed.

51. For the counts identified below, Defendant McAfee is vicariously liable for the unlawful calls, as they contracted with Total AV, benefitted from Total AV's unlawful calls and deceptive acts and directed Total AV's violative conduct.

**COUNT I**
**DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)(5)**

52. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

53. 47 U.S.C. § 227(c)(5) of the TCPA and its accompanying regulatory code, 64 C.F.R. § 64.1200(c), prohibit any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

54. Defendants contacted Plaintiff despite the fact that Plaintiff's telephone number had been registered on the Do Not Call Registry since April 04, 2008.

55. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

56. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

57. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## DEFENDANT VIOLATED THE INDIANA DECEPTIVE CONSUMER SALES ACT

58. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

59. Defendants violated Indiana Code 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic attempts to solicit an antivirus program to Plaintiff.

60. Indiana's DCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes bother implicit and explicit misrepresentation." I.C. 24-5-0.5-3(a).
>
> Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made

> orally, in writing, or by electronic communication by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).
>
> An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead. IC 24-5-0.5-2

61. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

62. Defendants are both, individually, a "supplier" as defined by the IDCSA, I.C. 24-5-0.5(a)(3).

63. Defendants' solicitation text messages were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

64. Defendants engaged in unfair, abusive, and deceptive behavior in its solicitations directed to Plaintiff. Through systematic and frequent solicitation attempts, Defendants have relentlessly contacted Plaintiff, despite Plaintiff's presence on the Do Not Call Registry. Plaintiff continuously demanded that Defendants' solicitation attempts cease. However, Defendants purposefully ignored Plaintiff's demands in an abusive attempt to solicit antivirus products. By continuing to contact Plaintiff despite his presence on the National Do Not Call Registry, and Plaintiff's repeated attempts to demand that communications cease, Defendants engaged in abusive behavior.

65. Further, Defendants' deceptive practices of falsely representing that Plaintiff's cellular device had viruses was done so for the purpose of misleading Plaintiff into thinking that their product was necessary to correct a fabricated issue.

66. In violating the TCPA, Defendants further violated one of the specifically enumerated prongs of the IDCSA, I.C. 24-5-0.5-3(b)(19).

**Wherefore**, Plaintiff, **Thomas Roehrman** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(c);
b. Statutory damages of $500.00 per text/call (as provided under 47 U.S.C. § 227(c);
c. Treble damages of $1,500.00 per text/call (as provided under 47 U.S.C. § 227(c);
d. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);
e. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);
f. Injunctive relief (as provided under 47 U.S.C. § 227(c); and
g. Any other relief this Honorable Court deems appropriate.

Respectfully submitted,

Dated: August 05, 2022

By: */s/ Jacob U. Ginsburg*

Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 E. Butler Ave.
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com